UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JONATHAN A. YOUNG,

      Plaintiff,               Case No. 3:17-cv-00244
                                  District Judge Waverly D. Crenshaw, Jr.
v.                             Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**<u>REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
(DE 18) AND REMAND TO THE COMMISSIONER</u>**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for judgment on the

administrative record (DE 18) and **REMAND** this case to the Commissioner and

the ALJ under Sentence Four of § 405(g) for further consideration consistent with

the report below.

## II.    REPORT

Plaintiff, Jonathan A. Young, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance (DI) benefits and supplemental security income (SSI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for judgment on the administrative record and brief in support (DEs 18, 19), the Commissioner's response to Plaintiff's motion (DE 23), Plaintiff's reply brief (DE 25), and the administrative record (DE 16).

### A.    Background

Plaintiff filed his applications for DI and SSI benefits on November 4, 2013, alleging that he has been disabled since January 15, 2013, at age 44. (R. at 187-201.) Plaintiff's applications were initially denied on April 24, 2014, and upon reconsideration on July 11, 2014, and he sought a *de novo* hearing before an Administrative Law Judge ("ALJ"). (R. at 51-108, 121-26.) ALJ Troy M. Patterson held a hearing on September 22, 2015, at which Plaintiff was represented by a non-attorney representative. (R. at 29-50.) The ALJ considered the evidence and determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 8-28.) On November 30, 2016, the Appeals Council denied

Plaintiff's request for review. (R. at 1-6.) Thus, ALJ Patterson's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on February 2, 2017. (DE 1.)

## B. Plaintiff's Medical History

Plaintiff's combined medical records span the period from March 19, 2012 through November 25, 2015, and generally include complaints of back, neck and shoulder pain, anxiety, depression and bipolar disorder. (R. at 248-933.) The 649 pages of medical records are mostly comprised of hospital and treatment records from several different health care providers, diagnostic testing, as well as consultative physical and mental examinations. These records will be discussed as necessary below.

## C. Hearing Testimony

Plaintiff testified at the September 22, 2015 hearing before ALJ Patterson. (R. at 33-46.) Vocational expert Chelsea Brown also provided testimony. (R. at 47-49.) The hearing testimony will be cited as necessary below.

## D. The Administrative Decision

On November 4, 2015, ALJ Patterson issued an "unfavorable" decision. At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4),

engaged in substantial gainful activity since January 15, 2013, the alleged onset date. (R. at 13.) At **Step 2**, the ALJ found that Plaintiff has the following severe impairments: status post bariatric surgery; residual effects of motor vehicle accident; anxiety; and, depression. (R. at 13-15.) At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 15-16.) Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[2] to:

---

416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> perform light work … except he can frequently perform postural
> activities but only occasionally climb ladders, ropes, and scaffolds.
> He is limited to performing simple routine tasks.  He can only have
> occasional interaction with coworkers, the public, and supervisors,
> and he cannot perform production rate pace work.

(R. at 16-20.) At **Step 4**, the ALJ found that Plaintiff is unable to perform any past

relevant work.  (R. at 20.) At **Step 5**, considering Plaintiff's age, education, work

experience, and RFC, the ALJ determined that there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform.  (R. at

20-21.)  The ALJ therefore concluded that Plaintiff had not been under a disability,

as defined in the Social Security Act, from January 15, 2013, through the date of

the decision.  (R. at 21-22.)

###    E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing <u>Wright-Hines v. Comm'r of Soc. Sec., 597 F.3d 392, 395 (6th Cir. 2010)</u>). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In his motion for judgment on the administrative record, Plaintiff sets forth five areas in which he asserts the ALJ committed reversible error. First, he contends that the ALJ erred in crafting Plaintiff's physical RFC by ignoring

relevant evidence and failing to build an accurate and logical bridge between evidence and result. (DE 19 at 8-11.) Second, he argues that the ALJ erred in ignoring the multiple references in the record to his use of a cane. (*Id.* at 11-13.) Third, he asserts that the ALJ ignored an entire line of evidence contrary to his conclusions in arriving at his mental RFC assessment. (*Id.* at 13-16.) Fourth, he argues that the ALJ erred by playing doctor in rendering his conclusion that Plaintiff's motivation was driven by drug seeking, and rejecting all medical opinions of record. (*Id.* at 16-18.) And fifth, he contends that the ALJ erred in evaluating Plaintiff's subjective symptoms. (*Id.* at 18-23.) The Commissioner opposes Plaintiff's motion and broadly asserts that substantial evidence supports the ALJ's determination of Plaintiff's RFC. (DE 23 at 3-18.) Because I find that the ALJ erred in his evaluation of Plaintiff's treating physicians' opinions, and that this matter should be remanded on that basis, I will not address the merits of Plaintiff's other arguments.

## 1. The ALJ's Evaluation of Plaintiff's Treating Physician's Opinion

### a. Treating source opinion evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis

and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

For claims filed before March 27, 2017, "the Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Martin v. Colvin*, 207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)). "In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers." *Id.*

Under the regulations, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[3] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

―――――――――――

[3] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547); *see also, Betty v. Comm'r of Soc. Sec.*,

No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

      **b.**      Dr. Jule J. West's and Dr. James Sullivan's Opinions

Dr. Jule J. West, one of Plaintiff's treating physicians employed with United Neighborhood Health Services, authored a Mental Impairment RFC Questionnaire on February 23, 2015, in which she noted that she had been treating Plaintiff since December 3, 2013. (R. at 802-05.) Dr. West noted in part that "chronic pain severely limits [Plaintiff's] ability to work and function" and that he is "stable on [a] comprehensive medication regimen." (R. at 802.) She listed "lethargy[,] dizziness[,] ataxia[,] drowsiness[,] nausea[, and] poor concentration" as side effects of his medications, and his prognosis as "poor." (*Id.*) She identified numerous "signs and symptoms" of Plaintiff and opined that Plaintiff was: seriously limited with regard to six different "mental abilities and aptitudes needed to do unskilled work;" unable to meet competitive standards in three areas; and, possessed "no useful ability to function" with respect to three areas. (R. at 804.) Dr. West opined that Plaintiff was moderately restricted in activities of daily living, had moderate difficulties in maintaining social functioning, had marked difficulties in maintaining concentration, persistence or pace, that he experienced four or more episodes of decompensation within a 12 month period, each of at least two weeks

duration, and that his impairments or treatment would cause him to be absent from work three or more days per month. (R. at 805.) [4]

Dr. James Sullivan, another of Plaintiff's treating physicians employed at Nashville General Hospital, completed a Residual Functional Capacity Questionnaire on March 19, 2015, in which he reported that he had treated Plaintiff since January 21, 2014. (R. ta 808.) Dr. Sullivan listed Plaintiff's diagnoses as "severe discogenic back pain, entire L-spine," his prognosis as "poor," and reported clinical findings of "severe stress secondary to back pain[.]" (*Id.*) Dr. Sullivan opined that Plaintiff was: seriously limited with regard to four different "mental abilities and aptitudes needed to do unskilled work;" unable to meet competitive standards in five areas; and, possessed "no useful ability to function" with respect to four areas. (R. at 809.) Dr. Sullivan further opined that Plaintiff is "severe[ly]" "limited in the ability to deal with the typical stress of working," that he can sit and stand/walk less than 2 hours each in an eight-hour workday, that he has "all bad" days, and that he does not think Plaintiff can work at all. (R. at 810.)

ALJ Patterson broadly states that he "has considered all of the evidence contained in the record," that "[e]ach source opinion has been given the appropriate weight" pursuant to the regulations, and that he gives Drs. West's and

[4] Dr. West also provided a second opinion on November 25, 2015, that post-dates the ALJ's decision in this case by three weeks, in which she opined that Plaintiff "is dependent on [an] extensive amount of medications with side effects that prohibit the ability to work" and that these medications "contribute to lethargy, drowsiness, nausea, ataxia, and poor concentration." (R. at 932.) Dr. West then concluded that "[b]etween his severe and persistent mental illness, his chronic pain, and the medication required for these diseases, [Plaintiff] is severely limited in his ability to work and function." (*Id.*) This opinion must be considered on remand.

Sullivan's opinions "little weight[.]" (R. at 20.) Specifically, as to the treating

physicians' opinions, the ALJ stated:

> Dr. Jule West and Dr. James Sullivan offered opinions stating that the
> claimant is essentially unable to maintain gainful employment
> (Exhibits 10F and 11F). These opinions are accorded little weight as
> they are based on the claimant's mental functioning; the claimant's
> psychological symptoms are closely tied to his perceived physical
> pain and specifically, his ability to obtain narcotic pain medication.
> These opinions do not consider the clinical and consultative
> examination findings showing where the claimant's physical
> functioning is not severe as alleged or his mental health treatment
> records that show that his symptoms improve with medication.

(R. at 20.)

With regard to the remaining opinion evidence, the ALJ discussed the

reports from the April 2, 2014 psychological consultative examination by Dr. E-

Ling Cheah and the April 4, 2014 orthopedic consultative examination by Dr.

Alexander Chernowitz, but failed to assign those opinions any particular weight.

(R. at 14-15, 18, 726-37.) ALJ Patterson also failed to address the opinions of the

consultative reviewing physicians in his opinion.[5]

---

[5] Plaintiff argues that the ALJ's failure to even mention the opinions of the State
agency reviewing physicians is remandable error, citing SSR 96-6p. (DE 19 at 16.)
The Commissioner responds that Plaintiff' argument is "without merit" because
each of these reviewing doctors' opinions supports the ALJ's RFC. (DE 23 at 14-
15.) While case law does support the Commissioner's argument that the ALJ's
failure to discuss State agency physicians' opinions can constitute harmless error *if*
the ALJ's RFC is consistent with those physicians' opinions, *see, e.g.*, *Murphy v.
Comm'r of Soc Sec.*, No. 13-11795, 2014 WL 2558685, at *8 (E.D Mich. Apr. 30,
2014), *report and recommendation adopted*, 2014 WL 2558686 (E.D. Mich. June
6, 2014), because I am recommending that the case be remanded, the State agency
reviewing physicians' opinions should then be addressed by the ALJ in

### i. *Controlling weight*

Initially, I note that in "weighing" the opinion evidence of Drs. West and Sullivan, the ALJ did not mention the concept of "controlling weight" and never specifically declined to afford these opinions controlling weight, although it is undisputed that both doctors are Plaintiff's treating physicians. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (stating that the regulations are designed to "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule"). "Such failure is error where the Court cannot determine whether the ALJ undertook the 'two-step inquiry' required when weighing treating source opinions." *Martin*, 207 F.Supp.3d at 789 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013); *Chrisman v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013)).

ALJ Patterson also failed to provide any analysis of the controlling weight factors—*i.e.*, whether the opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2). The ALJ failed to discuss the substance of the doctors' opinions at all, except for conclusorily stating that the opinions state that "the claimant is essentially unable to maintain gainful

---

formulating Plaintiff's RFC in accordance with the regulations. *See* 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (while ALJ's are not bound by the findings of State agency physicians, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions").

employment." (R. at 20.) As set forth above, and in the record, the doctors' opinions state much more than that regarding Plaintiff's impairments and his functional limitations. In addition, as Plaintiff points out in his brief, with the exception of a passing general reference to "[t]reatment records from United Neighborhood Health Services," which the ALJ admits "show that the claimant suffers from degenerative disc disease and several other legitimate pain causing ailments[,]" the ALJ also fails to discuss these doctors' extensive treatment notes in his opinion (*see* R. at 738-801, 827-931), and fails to show any inconsistencies between those treatment notes and the doctors' opinions. (R. at 16-20.)

Instead, as discussed further below, the ALJ's critique of Drs. West's and Sullivan's opinions seems to focus on the "consistency," and perhaps "supportability," factors set forth in 20 C.F.R. §§ 404.1527(c)(3) an (4), which would apply only *after* the ALJ declines to "give the treating source's opinion controlling weight[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart*, 710 F.3d at 376 (noting that certain factors are "properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight"). Such failure amounts to reversible error. *See Gayheart*, 710 F.3d at 377 (finding error where the ALJ's "analysis does not explain to which aspect of the controlling weight test [a] critique is relevant").

### ii. *Wilson factors*

Even if the ALJ had properly conducted the "controlling weight" analysis above, as he was required to do, he was still required to apply the regulatory (or *Wilson*) factors and give "good reasons" for discounting Drs. West's and Sullivan's opinions—which he failed to do.  This is so because even when "controlling weight" is not given, the opinions of a treating physician are still entitled to "substantial deference or some weight."  *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009); *see also* SSR 96-2p ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.").  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR. 96–2p, 1996 WL 374188, at [*]5 (July 2, 1996).  As explained above, failure to properly apply the *Wilson* factors can constitute harmless error only if: (1) the doctors' opinions are "so patently deficient that the Commissioner could not possibly credit [them];" (2) the Commissioner adopts the opinions; or, (3) where the ALJ has otherwise met the regulation's goal.  *See Nelson*, 195 F. App'x at 470.  However, I find that Drs. West's and Sullivan's opinions are not "patently deficient," and they certainly were

not adopted by the Commissioner.  Further, I find, for the reasons set forth below, that the reasons given in declining to afford Drs. West's and Sullivan's opinions controlling weight are unsupported by substantial evidence.

Dr. West and Dr. Sullivan have been Plaintiff's treating physicians since December 2013 and January 2014, respectively, and continuing through at least 2015.  (R. at 738-801, 802-05, 808-10, 827-931, 932-33.)   The ALJ, however, wholly failed to address the doctors' specializations or the length, frequency, or nature and extent of the treatment relationships, when giving Drs. West's and Sullivan's opinions "little weight."  *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c).  He instead stated that they are assigned little weight because "they are based on the claimant's mental functioning; the claimant's psychological symptoms are closely tied to his perceived physical pain and specifically, his ability to obtain narcotic pain medication." (R. at 20.)  First, while it is true that Dr. West's opinion regarding Plaintiff's "mental impairment RFC" is based "on [Plaintiff's] mental functioning," Dr. Sullivan opined primarily regarding Plaintiff's *physical* impairments and functional limitations, noting diagnoses of "severe discogenic back pain, entire L-spine," that Plaintiff was taking oxycodone "with incomplete relief," and opining, in part, that Plaintiff could sit and stand/walk less than two hours each in an eight-hour workday.  (See R. at 802-05,

808-10.)  The ALJ wholly failed to address Dr. Sullivan's opinion regarding Plaintiff's physical impairments and functional limitations.

Second, ALJ Patterson fails to cite to any medical opinion in support of *his* apparent "diagnosis" that Plaintiff's "psychological symptoms are closely tied to his perceived physical pain and specifically, his inability to obtain narcotic pain medication."  (R. at 20.)   The ALJ similarly opined earlier in his opinion that Plaintiff's "biggest issue appears to be opiate dependence" and that "he is preoccupied with his pain[.]"  (R. at 18.)  However, the ALJ as a lay person is not qualified to make that diagnosis.  Instead, he is impermissibly "playing doctor" in an attempt to discount Plaintiff's treating physicians' opinions, and substituting Drs. West's and Sullivan's opinions with his own.  *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); *see also Fowler v. Colvin*, No. 1:13-cv-01092-TWP-MJD, 2014 WL 4840582, at *10 (S.D. Ind. Sept. 29, 2014) (ALJ was "impermissibly 'playing doctor'" by determining that the plaintiff's "ongoing dependence on narcotics and occasional drug-seeking behavior have had a detrimental affect on her pain and symptoms" without any evidence to support that conclusion). ALJ Patterson devotes a large portion of his opinion to discussing his contention that Plaintiff has engaged in "drug-seeking behaviors" and that his "biggest issue appears to be

opiate dependence" and that "he is preoccupied with his pain." (R. at 18-20.)

Although evidence of drug-seeking behavior can be relevant to assessing the

credibility of a claimant, the ALJ may not substitute his own judgment for those of

medical experts, as the ALJ did in this case. *See Clifford*, 227 F.3d at 870.

The ALJ then summarily stated that Drs. West's and Sullivan's opinions "do

not consider the clinical and consultative examination findings showing where the

claimant's physical functioning is not as severe as alleged or his mental health

treatment records that show that his symptoms improve with medication." (R. at

20.) This conclusory statement fails to satisfy the "meaningful explanation"

requirement. *See Renfro v. Comm'r of Soc. Sec.*, No. 2:12-CV-8, 2013 WL

392471, at *12 (E.D. Tenn. Jan. 10, 2013) (recommending remand where the ALJ

stated only that he found the treating physician's opinion to be inconsistent with

the medical evidence of record and that the plaintiff has a history of malingering),

*report and recommendation adopted*, 2013 WL 392470 (Jan. 30, 2013). For one

thing, the orthopedic consulting physician, upon whom the ALJ apparently does

rely, never even opined as to *any* functional limitations. (R. at 732-36.) Further,

the ALJ commits error when he never states what weight, if any, he is giving to the

consulting examiner's opinions, as he is required to do. (R. at 18.) *See* 20 C.F.R. §

416.927(f)(2)(ii) ("Unless the treating physician's opinion is given controlling

weight, the administrative law judge *must* explain in the decision the weight given

to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions of treating sources, nontreating sources, and other nonexamining sources who do work for us.") (emphasis added); *see also Gayheart*, 710 F.3d at 379-80 ("His failure to apply the same level of scrutiny to the opinions of the consultative doctors upon which he relied, let alone the greater scrutiny of such sources called for by 20 C.F.R. § 404.1527, further demonstrates that his assessment of [the treating source's] opinions failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis."); *Caffey v. Comm'r of Soc. Sec.*, No. 14-cv-02640-TMP, 2017 WL 4005450, at *5 (W.D. Tenn. Sept. 12, 2007) ("The ALJ's failure to apply the multi-factor analysis to the state consultants' opinions lessens the probative value of any inconsistencies between the state consultants' opinions and Dr. Robinson's opinion.").

Although the Commissioner attempts to offer additional justifications in her response brief regarding the ALJ's "weighing" of Dr. West's and Dr. Sullivan's opinions and treatment records, and the opinions of the examining and non-examining consultants, the Commissioner's post-hoc rationalizations are not an acceptable substitute for the ALJ's lack of rationale concerning his treatment of the opinions of Plaintiff's treating physicians. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) ("[I]t is not the Court's

job to conduct a de novo review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's."); *Schroeder v. Comm'r of Soc. Sec.*, No. 11-14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (Commissioner's "post hoc rationalization" is not an acceptable substitute for the ALJ's failure to adequately evaluate the medical evidence), *report and recommendation adopted*, 2013 WL 1294127 (E.D. Mich. Mar. 29, 2013). Rather, "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (citation omitted).

Based upon all the above, I find that the ALJ's discounting of Drs. West's and Sullivan's opinions does not meet the procedural requirements of 20 C.F.R. § 404.1527, and his decision is not supported by substantial evidence.

## 2. Remand under Sentence Four

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v.*

*Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (internal quotations omitted)). Here, the ALJ's discounting of Drs. West's and Sullivan's opinions does not meet the procedural requirements of 20 C.F.R. § 404.1527. Accordingly, I recommend that the Court remand this case under Sentence Four to correct the various deficiencies noted in this report and to reconsider this case as a whole. *See Cole*, 661 F.3d at 939 (The Sixth Circuit "has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and [the Sixth Circuit] will continue remanding when [it]

encounters opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 30, 2018          s/Anthony P. Patti
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE
                               SITTING BY SPECIAL DESIGNATION